## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

GALLAGHER BENEFIT SERVICES,                    CIVIL ACTION
INC., AND ARTHUR J. GALLAGHER & CO.

VERSUS                                         NO. 19-12731

H. WOOD VAN HORN                               SECTION: "B"(3)

### OPINION

Before the Court are defendant H. Wood Van Horn's motion to dismiss plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1),(6) and (7) (Rec. Doc. 17); (2) plaintiffs Gallagher Benefit Services, Inc. ("GBS") and Arthur J. Gallagher & Co.'s ("Gallagher") response in opposition (Rec. Doc. 18); and various reply, supplemental and sur-reply memoranda from parties.

**FACTS AND PROCEDURAL HISTORY**

Plaintiffs Gallagher Benefit Services, Inc. ("GBS") and Arthur J. Gallagher & Co. ("Gallagher") are both Delaware corporations organized with their principal place of business in Illinois. Rec. Doc. 1 at 1. Defendant H. Wood Van Horn is a citizen of Louisiana in the Eastern District of Louisiana. *Id*. Defendant was formerly employed by Gillis, Ellis, and Baker, Inc ("GEB") as a producer whose job responsibilities included producing new business and servicing new accounts. *Id*. at 2. GEB was an independent property and casualty insurance agency operating in Louisiana. *Id*.

On Friday, July 26, 2019, GEB entered into an Asset Purchase Agreement with plaintiff Gallagher through which plaintiff purchased and acquired substantially all GEB's assets, property, and business. *Id*. On Monday, July 29, 2019, defendant resigned without any prior-notice to Gallagher or GEB, and began working for a direct competitor, Stone Insurance, Inc. *Id*. Defendant had signed a Producer's Contract ("Employment Agreement") which contained a non-compete clause. Rec. Doc. 1-1. Section 14 of the Employment Agreement also contained and assignment clause that purportedly gave GEB the right to assign the agreement to an assignee. Rec. Doc. 1-1 at 9. The Employment Agreement was assigned by GEB to plaintiff Gallagher on Friday, July 26, 2019. *Id*. at 4.

Section 17 of the Employment Agreement provides that defendant was required to give 90-days written notice prior to terminating his employment with GEB. During this 90-day period, defendant would be required to "fulfill his fiduciary duties and employment responsibilities and obligations." Rec. Doc. 1 at 4. The Employment Agreement further described non-compete and non-solicitation provisions that extended over a period of two years. *Id*. at 4-5. The provision narrowly defined the term "Territory" to include "the Louisiana parishes of Orleans, Jefferson, St. Bernard, Plaquemines, St. Tammany, Washington, Tangipahoa, St. Helena, Livingston, East Feliciana, East Baton Rouge, Ascension, St. James, St. John, St. Charles, Lafourche, Terrebonne, Bossier,

Webster, Bienville, Claiborne and DeSoto." *Id.* at 5. Section 16 of the Employment Agreement states "[t]hat the responsibilities and obligations of [defendant] as set forth in paragraphs 8 and 9 of this Contract shall survive the termination, expiration, lapse, or end of this Contract, and shall also survive the end of the employment relationship between [defendant] and [GEB]." Rec. Doc. 1 at 6.

Prior to defendant's resignation, defendant allegedly transferred, downloaded, and/or forwarded to outside electronic devices and/or personal email accounts confidential and proprietary information, including but not limited to client expiration reports of GEB clients. *Id.* at 7. Plaintiffs contend that defendant did not return or deliver to plaintiffs any of the confidential and proprietary information at the end of his employment relationship and failed to provide 90-days written notice of his resignation. *Id.* at 8. Plaintiffs further allege that by entering into an employment relationship with Stone Insurance, Inc., defendant has engaged in a competing business and deprived plaintiffs of an adequate opportunity to retain clients. *Id.* Further, plaintiffs allege that defendant has "directly and/or indirectly solicited, requested, sought, or obtained the business of several former clients of GEB and/or has directly and/or indirectly solicited, enabled, requested, induced, and/or otherwise encouraged other persons or entities to engage in conduct

prohibited by the Employment Agreement." *Id*.   In their complaint, plaintiffs have enumerated ten clients, whom defendant serviced while employed with GEB, who switched their insurance coverage to Stone Insurance, Inc. after defendant's resignation. *Id*. at 8-9.

Plaintiffs have claimed breach of contract in Count I of their complaint, and a request for preliminary and permanent injunction in Count II. *Id*. at 9, 11. Plaintiffs pray for judgment in their favor for actual, compensatory and consequential damages, and for a preliminary and permanent injunction (1) prohibiting defendant from soliciting the business of any person who was his client at GEB, (2) from soliciting or causing any person or entity to engage in conduct that is violative of the Employment Agreement, (3) prohibiting defendant from using or divulging confidential information obtained in his prior to his employment with Stone Insurance, Inc., and (4) requiring defendant to abide by all terms set forth in the Employment Agreement for the remainder of the effective period. *Id*. at 13-14.

Defendant has filed this opposed motion contending that plaintiffs' complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of standing, 12(b)(6) for failure to state a claim, and 12(b)(7) for failure to join a required party. Rec. Doc. 17 at 1.

**LAW AND ANALYSIS**

### A. 12(b)(1) Motion to Dismiss for Lack of Standing

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction. On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the parties asserting jurisdiction bear the burden of "alleg[ing] a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012). Federal courts are courts of limited jurisdiction, and therefore have power to adjudicate claims only when jurisdiction is conferred by statute or the Constitution. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Constitutional standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Constitutional standing has three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61 (internal quotation marks and citations omitted).

### B. 12(b)(6) Motion to Dismiss for Failure to State A Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state

a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Twombly, 556 U.S. at 556).

When deciding whether a plaintiff has met his or her burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks omitted). Plaintiff must "nudge[] [his or her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## C. Restrictive Covenants in Louisiana

Restrictive covenants are disfavored under Louisiana law and are strictly construed against the party attempting to enforce them. *Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019)(citing *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 288 (5th Cir. 2012)); *see also SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695, p. 5 (La. 6/29/01); 808 So. 2d 294, 298(citations omitted). Section 921 governs the enforcement of non-compete agreements in Louisiana and reads in pertinent part:

> "Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable."

La. Stat. Ann. § 23:921 A.(1). The statute further notes:

> Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

*Id*. at C.

### D. Standing

Defendant claims that plaintiffs lack standing to bring suit because: (1) restrictive covenants are not assignable to third-party non-employers, and may not be enforced by third-parties; (2)

GEB's assignment clause in the Employment Agreement does not bind defendant "by its own terms"; and (3) if the employment agreement is assignable, the post-asset-sale assignment to Gallagher is legally null. Rec. Doc. 17 at 9. Defendant's contentions are incorrect, and plaintiffs have standing to pursue this action.

There is no Louisiana statute or caselaw that expressly discusses the enforceability of assigning a restrictive covenant, *i.e.* non-compete agreement, to a third-party assignee. Further, Section 921 is silent on the issue, and neither disallows nor grants an employer authority to assign a restrictive covenant to a third-party. *See* LA. STAT. ANN. § 23:921. Defendant cites to a Tulane Law Review article that notes, "[f]ollowing the 1989 amendment, courts can no longer enforce a noncompete agreement ancillary to the sale of a business solely based on its reasonableness. This revision took these types of non[-]competes outside the realm of the Civil Code's rule on freedom of contract and instead imposed strict statutory requirements that govern drafters to this day." Albert O. "Chip" Saulsbury, IV, *Devil Inside the Deal: An Examination of Louisiana Noncompete Agreements in Business Acquisitions*, 86 Tul. L. Rev. 713, 724 (2012). However, that article does not mention the ability or inability of an employer to assign an employment agreement containing a restrictive covenant to a third-party, and rather concerns whether the clause itself is enforceable. Thus, as the first question is

whether the Employment Agreement in this case can be assigned, we will look to the general rules of obligations in Louisiana.

The Louisiana Civil Code provides, "[a]ll rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the signor against the debtor." LA. CIV. CODE. ANN. art. 2642. The Fifth Circuit has noted that:

> In Louisiana, '[r]ights are divided into real rights (those that confer authority over a thing) and personal rights (those that confer authority over a person). Personal rights are further subdivided into heritable rights and strictly personal rights.' *Covert v. Liggett Group, Inc.,* 750 F. Supp. 1303 (M.D. La. 1990) (citing La. Civ. Code. Ann. art. 1763, comment (b)). A heritable right is a right that may be transferred to another person, whereas a strictly personal right is a right that may not be transferred, in life or by death."

*In re Pembo*, 32 F.3d 566 (5th Cir. 1994)(internal footnotes omitted). The Louisiana Civil Code further defines a strictly personal obligation as an obligation whose "performance can be enforced only by the obligee, or only against the obligor. When the performance requires the special skill or qualification of the obligor, the obligation is presumed to be strictly personal on the part of the obligor.  All obligations to perform personal services are presumed to be strictly personal on the part of the obligor." LA. CIV. CODE. ANN. art. 1766. Further, the Civil Code defines a heritable obligation as one whose, "performance may be enforced by a successor of the obligee or against a successor of the obligor.

Every obligation is deemed heritable as to all parties, except when the contrary results from the terms or from the nature of the contract." LA. CIV. CODE. ANN. art. 1765.

As written, the Employment Agreement is strictly personal as to the obligor, defendant Van Horn, while it is heritable as to the obligee, GEB, subsequently Gallagher by way of assignment. Section 14 of the Employment Agreement reads:

> **14. ASSIGNMENT.** The services, responsibilities, obligations, and rights of the Producer [Van Horn] under this Contract are unique and personal to the Producer [Van Horn] and, this Contract shall not be assigned or transferred in whole or in part by the producer. Company [GEB] may assign or transfer this Contract, in whole or in part, in which case the Contract, or any part(s) thereof so assigned or transferred, shall be fully binding upon any such assigns, transferees, or successors of Company [GEB]."

Rec. Doc. 1-1 at 9. Defendant contends that because the Employment Agreement states that the services are "unique and strictly personal" they are neither heritable or transferrable. Rec. Doc. 17 at 12. Defendant is correct; however, the only obligation that is strictly personal is the one that is owed by him, the obligor. The provision clearly states that "the services, responsibilities, obligations and rights of . . . [Van Horn] . . . are unique and personal to [Van Horn] . . ." Rec. Doc. 1-1 at 9. This means that defendant is prohibited from assigning or transferring *his* obligations under the Employment Agreement. However, Section 14 also notes that the "Company" may assign or transfer the contract,

and that any such assignment shall be fully binding upon "any such assigns, transferees, or successors." *Id*. This language implies that the obligation is heritable, and therefore assignable, on the part of the obligee, in this case GEB, who assigned their interest in the Employment Agreement to plaintiff Gallagher.

Plaintiffs also contend that defendants' cited case, *Jeansonne v. Hindy*, 413 So. 2d 999 (La. App. 4 Cir. 1982) is inapposite and does not stand for the proposition that *all* non-competition agreements are strictly personal, and therefore unassignable. In *Jeansonne*, the Jeansonnes entered into an agreement to sell Deluxe Bell Supermarket, Inc. to El Hindy, which included an agreement not to compete with El Hindy within a one-mile radius of Deluxe Bell. *Id*. at 999-1000. Thereafter, El Hindy sold the outstanding shares in Deluxe Bell to the Fontenelles. *Id*. at 1000. The Jeansonnes then brought suit for declaratory relief against the Fotnenelles and El Hindy to have the non-competition agreement declared null and void. *Id*.

In *Jeansonne* Louisiana Fourth Circuit Court of Appeal recognized that obligations are presumed heritable, absent a "special expression of the parties' intent that the agreement was for the benefit of the named obligee only." *Id.* at 1000 (citing *Thomas v. McCrery*, 147 So. 2d 467 (La. Ct. App. 2d Cir. 1962). The court held that the agreement executed between the Jeansonnes and El Hindy was a "specific expression of the parties' intent that

11

the agreement [was] made by the Jeansonnes in favor of El Hindy personally and not Deluxe Bell." *Id*. at 1000. Further, the court found that the particular non-competition clause had not been assigned, because "there was no evidence of an assignment of the non-competition agreement contained in the Act of Sale from El Hindy to the Fontenelles." *Id* at 1001. Said succinctly, the court held that the non-competition agreement was personal to the El Hindy, and could not be assigned to the Fontenelles, because: (1) the agreement was a specific expression of the parties' intent, and was made in favor of El Hindy, personally, and (2) there was no evidence that the non-competition agreement was assigned to the Fontenelles. *Id*.

The *Jeansonne* court also attempted to distinguish their facts from another case that is more closely on-point with the factual scenario here. *Jeansonne*, 413 So. 2d at 1000–01 (citing *Louisiana Office Systems, Inc. v. Boudreaux*, 298 So. 2d 341 (La. Ct. App. 3d Cir.) *remanded on other grounds*, 302 So.2d 37 (La. 1974), *dismissed on other grounds*, 309 So. 2d 779 (La. App. 3d Cir. 1975)). The court in *Jeansonne* stated "the assignor and assignee of the defendant's employment contract in *Louisiana Office Systems, Inc.,* . . . were essentially the same entity. In this case, the alleged assignee is a third party." *Jeansonne*, 413 So. 2d at 1001 (emphasis added). However, *Jeansonne's* logic flawed.

In *Louisiana Office Systems*, the court held that a non-compete between an employee and an employer was assignable, and that "contracts for the hire of labor, skill or industry are personal on the part of the obligor, but heritable on the part of the obligee." *Id.* at 343 (citing former La. Civ. Code. art. 2007[1]). The defendant employee in *Louisiana Office Systems, Inc.* entered into an employment agreement with Ron Brignac doing business as Louisiana Office Systems. *Id.* Mr. Brignac incorporated Louisiana Office Systems and subsequently assigned all his rights to the business, including his right to enforce the non-compete agreement to Louisiana Office Systems, Inc. *Id.* The court ultimately upheld the assignment of the non-compete from Mr. Brignac to Louisiana Office Systems, Inc., and enjoined defendant employee from competing against Louisiana Office Systems, Inc. *Id.* at 343–44.

Although the *Jeansonne* court reasoned that Mr. Brignac and Louisiana Office Systems, Inc. were essentially the same entity, they were not. Mr. Brignac was doing business as Louisiana Office Systems, and the employment agreement was made in *his* favor rendering *him* the obligee. *See Louisiana Office Systems, Inc.*, 298 So. 2d at 343. Mr. Brignac, the obligee then incorporated Louisiana

---

[1] The substance of Louisiana Civil Code Article 2007 is essentially the same as current Louisiana Civil Code Article 1766. La. Civ. Code Ann. art. 1766, rev. cmt. (e) ("Civil Code Article 2007 (1870) has been eliminated . . . because the rule it contained is now incorporated into the second paragraph of this Article.").

Office Systems, which became a juridical person,[2] and separate person entirely from Mr. Brignac. *Id.* Further, and importantly, the employee did not have a contract with Louisiana Office Systems, Inc., but only with Mr. Brignac, who then assigned his heritable right to receive performance to his new business and *third-person* Louisiana Office Systems, Inc. *See id.* Mr. Brignac did not assign the rights of the employment contract to himself, rather he assigned them to a newly created juridical person, who for all intents and purposes was a third person to the agreement between Mr. Brignac and the employee. Therefore, this Court finds that the assignment of the Employment Agreement in this case is proper, even though it is in favor of a third person, as the reasoning in *Jeansonne* is flawed and the ruling in *Louisiana Office Systems, Inc.* aligns with the Louisiana Civil Code provisions on assigning contracts.

Next, defendant contends that even if the Employment Agreement is assignable, that the terms of the agreement only bind the assignee plaintiff Gallagher, but not defendant Van Horn. The Louisiana Civil Code provides that "[i]nterpretation of a contract is the determination of the common intent of the parties." LA. CIV. CODE. ANN. Art. 2045. Further, when determining the intent of the

---

[2] LA. CIV. CODE ANN. art. 24 ("There are two kinds of persons: natural persons and juridical persons. A natural person is a human being.  A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership.  The personality of a juridical person is distinct from that of its members.").

parties, the civil code notes that "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE. ANN. art. 2050. Clearly, the intent of the parties was to create an Employment Agreement that could not be assigned by the obligor producer but could be assigned by the obligee employer. Here, although the contract notes that "the [Employment Agreement], or any part(s) thereof so assigned or transferred, shall be fully binding upon any such assigns, transferees, or successors of Company [GEB]" it was clearly intended to bind both the assignee and defendant employee, the obligor. Any other interpretation would render the contract ineffective. LA. CIV. CODE. ANN. art. 2049 ("A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.").

Finally, defendant argues that notwithstanding the enforceability of the provision and its assignability, the belated and undated assignment of the Employment Agreement is unenforceable as a matter of law. Rec. Doc. 17-1 at 14. However, defendant cites no precedential authority on point for this proposition from either federal courts interpreting Louisiana law nor Louisiana State courts. Rather, defendant cites to a non-binding Mississippi Supreme Court case, and several federal courts that do not apply Louisiana Law. For these reasons, defendant's

contention that the post-asset assignment of the Employment Agreement is invalid, fail. Further, notwithstanding the fact that other federal courts found the Mississippi Supreme Court case persuasive, those cases were not interpreting Louisiana law, rendering defendant's citation to the cases inapposite.

Accordingly, because the Employment Agreement is assignable, and plaintiffs have an interest in enforcing the non-compete agreement contained with the Employment Agreement, they have standing to pursue this claim.

**E. Failure to Sate a Claim**

Defendant claims that Gallagher has failed to state a cause of action against them. Rec. Doc. 17-1 at 16. The relevant portions of Section 921 are as follows:

> A.(1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.

> C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, *so long as the employer carries on a like business therein*, not to exceed a period of two years from termination of employment

LA. STAT. ANN. § 23:921 A, C. (emphasis added). Defendant argues that because defendant's former employer GEB is not currently "carrying on" a like business, and that only Gallagher is carrying on a like business, that any enforcement of the Employment Agreement is violative of Section 921. Rec. Doc. 17-1 at 17-18. Defendant also argues that to the extent Gallagher contends that it has stepped into the shoes of GEB by way of assignment that Section 921 does not allow for putative employers and the asset sale is not a "mere 'continuation' of the purchased business." *Id*. at 18.

Section 921 does not give a definition of employer, nor does it specifically denote that an employer's assigns are able to continue to enforce a non-compete clause between an assignee. LA. STAT. ANN. § 23:921. Instead, the statute merely requires that "the employer carries on a like business therein." *Id*. Above, this court held that the assignment of the Employment Agreement is valid under Louisiana law. Accordingly, the assignment of the Employment Agreement must allow Gallagher, the assignee, the ability to enforce the non-compete clause in the Employment Agreement. Although caselaw states that an agreement limiting competition must strictly adhere to the requirements of the statute, the statute merely requires that the "employer" be carrying on a like business. LA. STAT. ANN. § 23:921. The statute does not provide a definition for employer and does not specifically state that the

employer be its current employer. *Id*. Section 921 only requires that the agreement be between an employee and employer. Here, GEB and defendant entered into an agreement limiting defendant's ability to compete with GEB or solicit any of its customers upon ceasing his employment with GEB. Thereafter, GEB validly assigned their right as obligee of the non-compete clause to the assignee, Gallagher. It seems that common-sense would dictate that when a company sells its assets, customers included, and assigns its rights to all contractual performances owed to it, including those of its employees contractually obligated to perform in their favor, that the company who bought the assets and was assigned the rights of the now terminated company is able to enforce the rights and obligations owed to it.

Defendant next argues that plaintiffs fails to state a claim against the him is because the contract narrowly defined Company as "Gillis, Ellis, and Baker, Inc." Rec. Doc. 17-1 at 19. Defendant argues that the definition does not include or mention "assigns" or "assignees," and as such does not prevent an employee from competing against an assignee. This argument is meritless. Section 14 of the Employment agreement clearly and expressly states that: "Company [GEB] may assign or transfer this Contract, in whole or in part, in which case the Contract, or any part(s) thereof so assigned or transferred, shall be fully binding upon any such

assigns, transferees, or successors of Company [GEB]." Rec. Doc. 1-1 at 9.

Non-competition agreements are contracts between the parties and should be construed according to the general rules of interpretation of contracts. *See* LA. CIV. CODE ANN. arts. 2045-2057; *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695 (La. 06/29/01), 808 So .2d 294. The contract establishes the law between the parties, and the purpose of contract interpretation is to determine the *common intent of the parties*. LA. CIV. CODE ANN. art. 2045 (emphasis added). Courts must interpret contracts in a common-sense fashion, giving the words of the contract their common and usual significance. *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 2012-2055 (La. 03/19/13), 112 So. 3d 187 at 192. Each provision must be interpreted in light of the other provisions of the contract so that each is given the meaning suggested by the contract as a whole. LA. CIV. CODE ANN. art. 2050.

Here, defendant's interpretation would prevent the Employment Agreement from being assigned, even though the parties included Section 14 within the agreement, entitled "Assignment," which explicitly states that the "Company may assign or transfer this Contract, in whole or in part." Rec. Doc. 1-1 at 9. By including the Section 14, the assignment clause, the parties clearly contemplated that the Employment Agreement containing the non-compete could be assigned to another company. It would be

irrational to conclude that the parties included an assignment agreement in their contract, with a provision giving GEB the right to assign the contract, but only allowing the assignee to enforce non-competition with the assignor, instead of the assignee. Accordingly, defendant's argument fails.

**F. Failure to Join a Required Party FRCP 19**

Federal Rule of Civil Procedure 12(b)(7) authorizes a motion to dismiss for failure to join a required party in accordance with Rule 19. A party is indispensable under Rule 19 of the Federal Rules of Civil Procedure if, as a matter of equity, the court finds that the lawsuit cannot proceed without the absent party. Persons required to be joined include a person who, "in that person's absence, the court cannot accord complete relief among existing parties; or that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may as a practical matter impair or impede his ability to protect that interest." Fed. R. Civ. P. 19(a)(1)(B). The movant bears the initial burden of demonstrating that an absent party is a required party, but if an initial appraisal of the facts demonstrates the absent person is required, the burden is shifted to the opponent of joinder. *Hood v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009).

Defendant argues that GEB is a necessary and indispensable party, "[d]epending on what arguments plaintiff's make responding

to [defendant's] lack-of-standing and failing-to-state-a-cause-of-actions motions." Rec. Doc. 17-1 at 21. However, plaintiffs have not argued that GEB has a continuing interest in enforcing the non-compete agreement. Instead, plaintiffs contend that the Employment Agreement, and the right to enforce non-competition and non-solicitation clauses has been assigned in its entirety to Gallagher. Plaintiffs further argue that because of the assignment, GEB is not a necessary party under the federal rules of civil procedure because "it has no right or interest in enforcing the Employment Agreement that was assigned to Gallagher." Rec. Doc. 18 at 20. Accordingly, GEB is not a necessary party, as they do not have any interest in enforcing the non-compete agreement because of the assignment of the Employment Agreement.

### E. CONCLUSION

For the reasons outlined above,

**IT IS ORDERED** that defendant's motion to dismiss (Rec. Doc. 17) is **DENIED.**

New Orleans, Louisiana this 10th day of July, 2020.

_____

SENIOR UNITED STATES DISTRICT JUDGE